United States District Court
Southern District of Texas
**ENTERED**
March 27, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PEATWATUCK ENTERPRISES, § | |
| § | |
| *Plaintiff*, § | |
| VS. § | CIVIL ACTION NO. 4:24-cv-2631 |
| § | |
| TRUIST BANK, REGIONS BANK, § | |
| § | |
| *Defendants*. § | |

# ORDER

Pending before this Court is Defendant Regions Bank's ("Defendant" or "Regions") Motion to Dismiss. (Doc. No. 14). Plaintiff Peatwatuck Enterprises ("Plaintiff" or "Peatwatuck") responded in opposition, (Doc. No. 16), to which Defendant replied, (Doc. No. 21). Having considered the motion, the applicable law, the Court **GRANTS** the motion to dismiss Plaintiff's Original Petition. (Doc. No. 14).

## I.  Background

This case concerns, among other topics, the remedies available to the Plaintiff to recover money wired to Defendant Truist Bank. (Doc. No. 16 at 1). Plaintiff filed its Original Petition in the 125th Judicial District of Harris County. Defendant Truist Bank then removed the case to this Court. (Doc. No. 1 at 1). Plaintiff alleges that it was defrauded into making a wire transfer from its bank, Veritex Community Bank. It alleges that it wired $413,462.31 to Truist Bank. (Doc. No. 1-3 at 2). Plaintiff also contends in its Petition that an FBI investigation revealed that at least some of the funds remain at Truist, while others "were apparently sent to Regions." (*Id.*).[1] The Court notes that Truist has been dismissed from this action. (Doc. No. 22). Plaintiff alleges that Regions

---

[1]  Notably, Plaintiff concedes that it does not know how or why any of the funds were transferred from Truist Bank to Regions Bank. (Doc. No. 16 at 2).

bank has approximately $85,000 of Plaintiff's money frozen in an account. Plaintiff further alleges that Regions nevertheless stated it would only release the funds if Truist executed a "hold harmless agreement," which Truist refused to do because "it has no obligation to help Plaintiff as Plaintiff is not Truist's customer." (*Id.*). In response, Plaintiff argues that "Defendants should not be allowed to profit from bank fraud and all funds that came from Plaintiff need to be returned to Plaintiff." (*Id.*). Interestingly, Plaintiff "does not care how it is accomplished" but claims that "Truist and Regions need to return the funds to Plaintiff." (*Id.*).[2]

Based on the few facts pleaded by Plaintiff, it brings three causes of action: (1) money had and received; (2) unjust enrichment; and (3) aiding and abetting by assisting and participating. (Doc. No. 1-3 at 3–5). In response, Defendant Regions Bank states that "Plaintiff does not allege that Regions had any involvement in the purported wire transfer, participated in fraud, or that Plaintiff even had a bank account at Regions . . . [n]evertheless, Plaintiff attempts to hold Regions responsible for its loss." (*Id.*). Among other things, Regions argues that all three of Plaintiff's claims are preempted by Article 4A of the Uniform Commercial Code. (Doc. No. 14 at 1).[3]

## II.   Legal Standard

A defendant, or Plaintiff who is the subject of a counterclaim, may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[2]   The facts that the Court includes in this paragraph include all factual allegations that Plaintiff includes in the one-paragraph facts section of its Original Petition. *See* (Doc. No. 1-3 at 2).

[3]   Article 4A of the UCC was adopted by the Texas Legislature as TEX. BUS. & COM. CODE § 4A.101 *et seq*. Defendant's arguments are based on the Texas codification of the UCC provisions.

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 609 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678-79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III. Analysis

The Court finds that each of Plaintiff's three claims are, or would be, preempted by Article 4A of the UCC—adopted by the Texas Legislature as TEX. BUS. & COM. CODE § 4A. 101 *et seq.* As such, Regions Bank's Motion to Dismiss is **GRANTED**. (Doc. No. 14).

Chapter 4 of the UCC establishes the rights and duties between banks and their customers regarding deposits and collections. TEX. BUS. & COM. CODE ANN. §§ 4.101–.504. The UCC, in these relationships, contains a comprehensive and carefully considered allocation of responsibility among parties to banking relationships. *Sw. Bank v. Info. Support*, 149 S.W.3d 104, 107 (Tex. 2004); *Am. Airlines Emps. Fed. Credit Union v. Martin*, 29 S.W.3d 86, 91 (Tex. 2000).

3

Article 4A is intended to exclusively determine "the rights, duties, and liabilities" of parties in any situation covered by the particular provisions of the Article. *Consorcio Industrial de Construccion Titanes, S.A. de C.V. v. Wells Fargo Bank, NA*, No. 3:10-CV-2111-K, 2012 WL 13019678, at *2 (N.D. Tex. July 12, 2012) (citations omitted) (quoting TEX. BUS. &. COM. CODE § 4A-102 cmt.). Accordingly, when the UCC applies, common law claims that conflict with the UCC are precluded. *See Contractors Source, Inc.*, 462 S.W.3d at 138. *Am. Dream Team, Inc. v. Citizens State Bank*, 481 S.W.3d 725, 732 (Tex. App.—Tyler 2015, pet. denied). A plaintiff is therefore restricted from bringing non-Article 4A claims when those claims "create rights, duties and liabilities inconsistent with those stated in [Article 4A]." *Consorcio*, 2012 WL 13019678, at *2 (quoting *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1275 (11th Cir. 2003)).

Applicable here, Article 4A sets out a comprehensive statutory scheme governing the rights, duties, and liabilities of parties to a "funds transfer." TEX. BUS. & COM. CODE § 4A.101. A "funds transfer" is defined as "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." § 4A.104(1). Article 4A provides specific rules that govern a bank's obligations with respect to funds transfers. §§ 4A.201–406; *see also* § 4A.102 cmt. ("In the drafting of Article 4A, a deliberate decision was made to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment."). Finally, Article 4A "explicitly governs the post-transfer recovery process, by providing a careful system for orchestrating the return of funds after a transfer has already gone awry." *Valley Chili Properties, LLC v. Truist Bank*, No. EP-23-CV-420-KC, 2024 WL 3509483 *5 (W.D. Tex. June 27, 2024) (rejecting Plaintiff's argument that common-law claims were not inconsistent with Article 4A because they were related to Defendant's conduct after the funds transfer was accepted).

As such, under Article 4A, "[c]ommon law claims are precluded when a claim would impose liability inconsistent with any of the Article's provisions." *Moody Nat'l Bank v. Tex. City Dev., Co.*, 46 S.W.3d 373, 378 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

Thus, Article 4A governs Plaintiff's suit because the dispute arises out of Plaintiff's attempt to recoup transferred funds. The question then becomes whether Article 4A's provisions protect against the type of underlying injury or misconduct alleged in Plaintiff's Original Petition. *See Ma v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, 597 F.3d 84, 90 (2d Cir. 2010) (applying a substantially identical provision of the UCC's Article 4A adopted by the New York Legislature). Here, Plaintiff's three common law claims purport to hold Regions liable for conduct during a transfer and govern the recovery of funds following the transfer—both of which are specifically addressed by Article 4A, and therefore are preempted. *See Ison-Newsome v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 3:22-CV-2805-L-BH, 2023 WL 5022287 (N.D. Tex. July 21, 2023), report and recommendation adopted, 2023 WL 5022681 (Aug. 7, 2023).

### A. Money Had and Received

This claim is based solely on the fact that Regions *may* possess some of the funds transferred from Plaintiff to Truist Bank. A Money Had and Received claim "has been stated as a rule of law that if payments were made because of a serious mistake . . . [plaintiff] is entitled to restitution unless it has agreed to assume the risk of mistake or there is some reason which makes it inequitable or inexpedient for restitution to be granted." *Benson v. Travelers Ins. Co.*, 464 S.W.2d 709, 712 – 13 (Tex. App.—Dallas 1971, no writ).

It is therefore clear that Plaintiff's Money Had and Received claim in theory creates obligations for banks that receive a transfer of funds—exactly the purview of Article 4A. Since Plaintiff's Money Had and Received claim "protects against the type of underlying injury or

misconduct" governed by Article 4A, this claim is preempted. *See Merrill Lynch*, 597 F.3d at 90. This claim is therefore **DISMISSED**.[4]

### B. Unjust Enrichment

A plaintiff may recover under an unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of undue advantage. *See Pope v. Garrett*, 211 S.W.2d 559, 562 (Tex. 1948). While there is some authority that unjust enrichment is a remedy and not a cause of action, the Court hereby proceeds as if it was the latter.[5] The elements of an unjust enrichment claim, as pleaded by Plaintiff, require a showing that a defendant obtained a benefit from the plaintiff through fraud, duress, or taking undue advantage. (Doc. No. 1-3 at 5).

Here, Plaintiff makes no allegation that Regions participated in or had any knowledge of fraud or duress, or that it took any undue advantage. That, in and of itself, would require dismissal. Nevertheless, even if Plaintiff had adequately alleged an unjust enrichment claim, Regions' liability would be based on the inducement of Plaintiff to make the transfer of funds—explicitly within Article 4A's scope. *But see, Tex. Star Nut & Food Co. v. Truist Bank*, 632 F. Supp. 3d 664, 669–70 (D. Md. 2022) (holding that an unjust enrichment claim under Maryland law was not preempted to the extent that it was based on negligent opening and management of an account, not conduct relating to and following the funds transfer). Thus, while Plaintiff has not adequately alleged an unjust enrichment claim against Regions Bank, any such claim would be preempted by Article 4A. This claim is therefore **DISMISSED**.

---

[4]   By dismissing these claims with prejudice, the Court precludes the Plaintiff from reasserting the exact cause of action due to its preemption. It does not, however, preclude the Plaintiff from bringing non-preempted, claims based upon the same occurrence and seeking the same relief.

[5]   *See Celanese Corp. v. Coastal Water Auth.*, 475 F. Supp. 2d 623 (S.D. Tex. 2007) (holding that unjust enrichment is a remedy, not a cause of action); *but see Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007) (holding that "unjust enrichment claims are governed by the two-year statute of limitations in section 16.003 of the Civil Practice and Remedies Code.").

### C. *Aiding and Abetting by Assisting and Participating*

Though not pleaded with abundant clarity, Plaintiff's Aiding and Abetting claim seems to be alleging liability against the banking defendants for their negligence in allowing the fraudsters to open accounts for the purpose of perpetrating their fraud. (Doc. No. 1-3 at 6). Specifically, Plaintiff alleges that "Defendants are responsible for the result of this united effort because its breach of duty, negligence, and tortious conduct was a substantial factor in causing the losses Plaintiff suffered." (*Id.*). Plaintiff's pleading, however, contained no actual factual support for the allegations of negligence, described no duty that Regions owed, and alleged nothing resembling tortious conduct. (*Id.*). Likely due to the dearth of factual allegations, Plaintiff states that an aiding and abetting claim does *not* require Regions to know that the other actor's conduct was tortious, citing (partially) the Restatement (Second) of Torts, § 876(c). Interestingly, however, Section 876(c) in its entirety, states:

> In order for the rule stated in Clause (a) to be applicable, **it is essential that the conduct of the actor be in itself tortious.** One who innocently, rightfully and carefully does an act that has the effect of furthering the tortious conduct or cooperating in the tortious design of another is not for that reason subject to liability.

Restatement (Second) of Torts § 876(c) (1979). Thus, Plaintiff must plead that Region's conduct itself was tortious to support an aiding and abetting claim. Aiding and abetting itself, without an underlying tort, cannot stand alone as a legal claim in Texas. *See Juhl v. Airington*, 936 S.W.2d 640, 644–45 (Tex. 1996). As such, Plaintiff has failed to adequately plead a claim for Aiding and Abetting by Assisting and Participating. As such, it is hereby dismissed with prejudice.

If, however, the Original Petition had adequately alleged negligent conduct by Regions, any such aiding and abetting claim based on that conduct would still be preempted by Article 4A. As negligence claims have are preempted by Article 4A, the preemption of the underlying claim would prevent Plaintiff from prevailing on an aiding and abetting claim. *Sliders Trading Co., LLC*

*v. Wells Fargo Bank, N.A.*, No. 17-04930, 2017 WL 6539843, at *5 (N.D. Cal. Dec. 21, 2017)) ("Because negligence claims do not have this actual knowledge requirement, courts have repeatedly found that Article 4A preempts negligence clams (sic) where the bank processed a payment order despite the existence of a discrepancy between the beneficiary identified on the payment order and the name on the account identified by the provided account number."); *Hirt v. Wells Fargo Bank, N.A.*, No. 4:20-CV-1616, 2021 WL 536514, at *3 (S.D. Tex. Jan. 5, 2021), report and recommendation adopted, No. 4:20-CV-1616, 2021 WL 515037 (S.D. Tex. Feb. 11, 2021). This claim, to the extent it is sufficiently pleaded, is therefore **DISMISSED**.

  *D. Plaintiff's Original Petition Falls Below Every Pleading Standard*

  In sum, Plaintiff's Original Complaint is fatally defective for lack of any factual basis to support its claims against Regions. The entirety of Plaintiff's allegations are as follows:

> Plaintiff was defrauded into making a wire transfer, and the banks currently holding the stolen funds are refusing to return Plaintiff's money. Plaintiff's bank, Veritex Community Bank ("Veritex"), sent a wire in the amount of $413,462.31 to Truist with the Domestic Wire Tracking ID of 1929058. According to an FBI agent that is investigating this matter, Truist may still be in possession of some of Plaintiff's funds. The FBI agent also said that Truist disclosed that some of the funds were apparently sent to Regions. Upon information and belief, Regions purportedly has at least $85,000.00 frozen in an account, and Regions has stated it will only release the funds if Truist executes a hold harmless agreement. Truist has refused to comply with Regions' request because Truist has claims it has no obligation to help Plaintiff as Plaintiff is not Truist's customer. However, Defendants should not be allowed to profit from bank fraud and all funds that came from Plaintiff need to be returned to Plaintiff. Simply put, Plaintiff's funds have been directly traced to Truist and/or Regions, and Plaintiff does not care how it is accomplished but Truist and Regions need to return the funds to Plaintiff. This is obviously bank fraud if the banks hold funds that truly belong to Plaintiff.

(Doc. No. 1-3 at 2).

  This paragraph is at best conclusory—especially in its allegations against Regions Bank. In no way does Plaintiff plead facts to support its conclusion that fraud occurred. It does not plead how, when, or who committed the fraud. The Original Petition contains neither facts to support the

conclusion that either of the defendant banks has any proceeds that related to a fraudulent act, nor does it include any facts even suggesting that either bank is under any duty to return such funds. The Court is left with one of two conclusions: (1) either the Plaintiff had no reasonable basis for filing the suit; or (2) it is purposefully hiding the facts from the Defendants and the Court. Either way, this pleading falls well below any known pleading standard.

That being the case, the Court dismisses the entire Petition as outlined above. Plaintiff, however, is given leave to file an adequate Amended Complaint that complies with the law, the Federal Rules of Civil Procedure, and this Order. Any such Amended Complaint must be filed by April 18, 2025. If an Amended Complaint is timely filed, Defendant Regions Bank may respond, as it sees fit, by May 9, 2025. If no Amended Complaint is timely filed, this matter will be dismissed with prejudice.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Region's motion to dismiss the claims against it in the Plaintiff's Original Petition. (Doc. No. 14). The Court therefore **DISMISSES** Plaintiff's current claims against Regions Bank.

Signed on this __26th__ day of March, 2025.

Andrew S. Hanen
United States District Judge